U.S. COMMODITY FUTURES
TRADING COMMISSION,
Plaintiff,

v.

FAN WANG, Defendant.

16–cv–6961 (JGK)

United States District Court,
S.D. New York.

Signed 08/08/2017

Peter Martin Haas, Jonah Eric McCarthy, Commodity Futures Trading Commission, Kassra Goudarzi, U.S. Commodity Futures Trading Commission, Washington, DC, for Plaintiff.

Leif Thorsten Simonson, Kobre & Kim LLP, New York, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

On September 6, 2016, the plaintiff, the U.S. Commodity Futures Trading Commission (the "Commission"), filed a Complaint against the defendant, Fan Wang a/k/a Alex Wang, seeking injunctive and other equitable relief and civil penalties for violations of the Commodity Exchange Act (the "CEA"), 7 U.S.C. § 1 et seq.

On April 17, 2017, the Court entered a Consent Order for Permanent Injunction and Other Statutory and Equitable Relief against the defendant. Dkt. 18 (the "Consent Order"). The Consent Order resolved and settled all liability claims against the defendant and entered a permanent injunction prohibiting him from violating the CEA as charged. Consent Order ¶¶ 29–32. The issues of statutory relief pursuant to Section 6c of the CEA, 7 U.S.C. § 13a–1, appropriate equitable relief—including injunctive relief as to registration and trading—and the amount of a civil monetary penalty ("CMP") to be assessed were reserved. Consent Order ¶¶ 33–34.

Pending before the Court is the Commission's Motion for a Supplemental Order of Permanent Injunction and Other Equitable Relief against the defendant. The Commission seeks a CMP, a permanent commodity interest trading ban, and a permanent ban from registering with the Commission. The following constitutes the Court's Findings of Fact and Conclusions of Law.

## I.

The following facts are based on the parties' submissions, the Complaint, and the Consent Order. The allegations in the Complaint and the Findings of Fact and Conclusions of Law in the Consent Order are accepted as true for purposes of this motion. See Consent Order ¶ 35.

The defendant was born in China in 1986. Wang Decl. ¶ 2. The defendant immigrated to the United States when he was 15; at the time, he did not speak English. Wang Decl. ¶ 3. The defendant attended Cornell University, majored in Electrical and Computer Engineering, and graduated in 2009 with a Bachelor of Science degree. Wang Decl. ¶ 4. After graduation, the defendant was hired as a clerk at a certain financial services firm that engages in the proprietary trading of futures, options, and other securities (the "Company"). Wang Decl. ¶ 7. In early 2010, the defendant was promoted to assistant trader. Wang Decl. ¶ 9. His responsibilities included reconciling accounts, transferring trades among firm accounts, making trades for traders as directed, and various other ministerial tasks. Wang Decl. ¶ 9.

Eventually, the defendant was assigned to manage two of the Company's proprietary trading accounts, Account–1 and Account–2. Wang Decl. ¶ 11. The defendant could make transfers between the two accounts, and trade from the two accounts, subject to certain restrictions dictated by the Company's policy. Wang Decl. ¶ 12.

In October 2011, the defendant made certain trades in Account–2 that resulted in substantial losses. Wang Decl. ¶ 13; Simonson Decl., Ex. D (Sentencing Transcript) at 12. To hide the losing trades, the defendant transferred "certain profitable trades from Account–1 to Account–2 without receiving the requisite prior approval," which violated the Company's policy. Wang Decl. ¶ 14. The transfers resulted in a short position in Account–1. Wang Decl.

¶ 15. The situation spiraled down from there.

On November 16, 2011, in an effort to recoup the shortfall in Account–1, the defendant purchased futures contracts in Account–1, without receiving requisite approval from the Company. Consent Order ¶¶ 19, 29; Wang Decl. ¶ 16. Worried that his violations of Company policy would be discovered, the defendant attempted to hide the fact that he had made the additional trades. Wang Decl. ¶ 17. The defendant made multiple manual false entries in the Company's computerized trading records to disguise the status of many of the trades (specifically, to make certain futures contracts appear to be closed out even though they in fact remained open), and to disguise the fact that he had made the purchases. Consent Order ¶¶ 22–23.

The manual entries on November 16, 2011 were false reports in connection with a commodity transaction in violation of 7 U.S.C. § 6b(a)(1)(B). Compl. ¶¶ 1, 20.

Two days later, on November 18, 2011, the Company's Managing Partner asked the defendant to explain why the Company had received a margin call on Account–1. Wang Decl. ¶ 20. The defendant explained what he had done, and then met with his supervisor and a clerk to show them what he had done. Wang Decl. ¶ 20. The defendant was terminated from the Company on the same day. Wang Decl. ¶ 21.

From the time of his termination on November 18, 2011 until March 2014, the defendant was unaware that he was under any kind of investigation by the Government. Simonson Decl., Ex. D at 7. The Commission identifies no evidence of wrongdoing during that period.

In 2014, the defendant was charged criminally, and, on July 16, 2014, pleaded guilty to making a false report in connection with a commodities transaction in vio-

lation of 7 U.S.C. §§ 6b(a)(1)(B) and 13(a)(2). See Simonson Decl., Ex. C.

On November 13, 2014, the defendant was sentenced before Judge Pauley. During sentencing, the defendant addressed the court:

Thank you for giving me the opportunity to speak.

I want to begin by apologizing for what I have done. I am very sorry for my mistake. I know that what I did was wrong. I apologize to the Court and to the government. I also want to apologize to [the Company] for what I have done. And, I want to apologize to my parents. They raised me to always do the right thing and I am deeply ashamed for what I have done.

. . .

At this point I want the Court to know that I have learned my lesson. I have otherwise been a law-abiding citizen my whole life and I promise that I will never, ever, do anything like this again.

Simonson Decl., Ex. D at 19. In reviewing the case, the court asked the Government whether the defendant was "low hanging fruit." Simonson Decl., Ex. D at 17. The court observed:

This is [Mr. Wang's] first criminal conviction and the underlying acts here were stimulated by a panicked, misguided state of mind. The young man was terrified that he was going to get in trouble with his employer and so he falsified trading records. This was, as his lawyers argue, a foolish and immature act. But, of course, he also did not want to jeopardize his bonus in trying to preserve an approximately $100,000 bonus he incurred losses the government has now computed at $2.2 million.

Looking at all of Mr. Wang's life and the submissions that were made on his behalf, his conduct was aberrant behavior . . . .

Since Wang's termination three years ago he has tried to use his natural gifts to tutor students in various disciplines. Some of that tutoring has been voluntary community service and other tutoring has been through his current employment. The sentencing submissions reflect the devotion to his students. He came to this country and pulled himself up and until this matter came to light, had a promising future. This Court still believes that he has a promising future and that he can make a meaningful and important contribution to the United States if he is permitted to remain in the country.

Simonson Decl., Ex. D at 24–25. The court varied downwardly from the Guidelines recommended sentence of between 30 and 37 months imprisonment and imposed a sentence of three months imprisonment, followed by three years of supervised release. Simonson Decl., Ex. D at 22, 25–26. The court also ordered the defendant to pay restitution in the amount of $2.2 million as a condition of supervised release. Simonson Decl., Ex. D at 26.

The defendant has served his term of imprisonment and is currently on supervised release. The defendant tutors students in math and physics, for which he earns approximately $3,700 per month. Wang Decl. ¶ 23. He lives with his mother and has virtually no assets. Wang Decl. ¶ 22. He has been making timely restitution payments.

## II.

The Commission has moved for a permanent injunction barring the defendant from registering with the Commission and participating in the markets regulated by the Commission.

Section 6c(b) of the CEA provides that "[u]pon a proper showing, a

permanent ... injunction ... shall be granted without bond." 7 U.S.C. § 13a–1(b). In order to obtain an injunction, the Commission must show that "there is a likelihood that, unless enjoined, the violations will continue." CFTC v. Am. Bd. of Trade, Inc., 803 F.2d 1242, 1250–51 (2d Cir. 1986); see also Commodity Futures Trading Comm'n v. Creagh, No. 15-CV-6140 (JPO), 2017 WL 1929624, at *2 (S.D.N.Y. May 10, 2017) ("Courts need not enjoin only identical future violations; they may extend to restrictions on trading activity generally, if a court finds that defendants are not likely to 'make good faith efforts to comply with restrictions,' more broadly, in the future."). In determining whether an "inference that the defendant is likely to repeat the wrong" is warranted, courts consider the "totality of the circumstances," including the "commission of past illegal conduct." SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975).[1] In doing so, courts consider the following factors:

> [T]he egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339, 1346 (11th Cir. 2008) (citation omitted); accord Commodity Futures Trading Comm'n v. Incomco, Inc., 580 F.Supp. 1486, 1489 (S.D.N.Y. 1984) (citing SEC v. Universal Major Industries, 546 F.2d 1044, 1048 (2d Cir. 1976)).

■ Upon careful consideration of the record, the Court concludes that a permanent injunction, other than the consented-to injunction against violation of the CEA, is not warranted. To justify an injunction, the Commission relies almost exclusively on the underlying wrongdoing itself. But that conduct does not show that the defendant is likely to commit further violations of the CEA in the future. Judge Pauley has already concluded that the misconduct was aberrant. The misconduct was not egregious. The violations of the CEA occurred over the course of one hour, and the violations of Company policy (which, the Commission argues, is indicative of future misconduct) occurred over the course of about one month. The Commission has identified no evidence of wrongdoing before or after that period, including during the approximately two-and-a-half years between the defendant's termination and his realization that he was the target of a Government investigation. Instead, as Judge Pauley found, the defendant's actions seem to have been driven by panic, one mistake compounding another, which ultimately resulted in the violations of the CEA.

The defendant confessed to his wrongdoing almost immediately once the Company's Managing Partner questioned him about the margin call. There is no evidence that the defendant attempted to fabricate an excuse for the margin call.

The evidence demonstrates that the defendant has acknowledged his wrongdoing and accepted responsibility for his actions.

---

1. In analyzing enforcement actions under 7 U.S.C. § 13a–1(b), courts (as did the parties in this case) generally rely on the reasoning of cases, such as Mgmt. Dynamics, 515 F.2d at 807, that analyzed enforcement actions under Section 20(b) of the Securities Act of 1933 and Section 21(e) of the Securities Exchange Act of 1934. See, e.g., Commodity Futures Trading Commission v. Morgan, Harris & Scott, Ltd., 484 F.Supp. 669, 677 (S.D.N.Y. 1979).

The Commission argues that an injunction is warranted because the defendant has failed to establish that he cannot secure employment in a field other than commodities trading. That consideration is irrelevant to the analysis. The only question is whether the defendant is likely to violate the CEA again unless he is enjoined from registering with the Commission and trading commodities. The Commission has failed to establish that is true. The defendant's dream is to return to trading commodities. Wang Decl. ¶ 24. If he is able to accomplish that goal, there is no evidence that he will violate the CEA again.

Similarly, the fact that the defendant has paid just a small portion of restitution does not change the calculus. The evidence shows that the defendant has complied with his obligations to pay restitution within his means.

Accordingly, the application to bar the defendant permanently from registering with the Commission and participating in the markets regulated by the Commission is **denied**.

### III.

The Commission argues that a CMP of $335,466 for two violations of the CEA should be imposed on the defendant, reflecting the maximum statutory penalty of $167,728 per violation. 17 C.F.R. § 143.8(a)(4)(ii)(B). The Commission arrives at that CMP by arguing that each falsified data entry constituted a violation of the CEA, meaning that the defendant violated the CEA multiple times within one hour. The defendant concedes that he violated the CEA, although he disputes the number of times. He urges that the CMP imposed should be no more than the amount for one violation at the statutory maximum of $167,728 in light of the circumstances of the case.

■ "In determining an appropriate penalty, [a court] 'considers the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist.'" Creagh, 2017 WL 1929624, at *2 (quoting Wilshire Inv. Mgmt. Corp., 531 F.3d at 1346). The penalty imposed must be "rationally related to the offense" and rests within the discretion of the Court. Id. (quoting R & W Technical Servs. Ltd. v. CFTC, 205 F.3d 165, 177 (5th Cir. 2000)).

■ For similar reasons to those discussed in connection with denying the requested injunction, the Court concludes that a CMP of $167,728 is rationally related to the defendant's misconduct. The defendant did falsify more than one record but there are extensive mitigating factors in this case. The violation of the CEA—although serious—does not warrant a higher penalty. See, e.g., id. at *1–2 (imposing a sanction of $125,000, even though the Commission sought a sanction of $500,000, for misconduct that stretched over two years); Commodity Futures Trading Comm'n v. Fleury, 479 Fed.Appx. 940, 944 (11th Cir. 2012) (summary order) (affirming sanction of $120,000 where the defendants "violated the CEA for a significant time and defrauded many customers"). The penalty serves the deterrence goals of the CEA and is rationally related to the wrongdoing.

In addition, the lower fine is more consistent with what the defendant can realistically pay. See, e.g., U.S. Commodity Futures Trading Comm'n v. 4X Sols., Inc., No. 13-CV-2287(RMB)(FM), 2015 WL 9943241, at *3 (S.D.N.Y. Dec. 28, 2015) ("[C]ourts should be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources." (citations omitted)), report and recommendation adopted, No. 13-CV-

2287(RMB)(FM), 2016 WL 397672 (S.D.N.Y. Jan. 29, 2016).

To argue that the defendant's ability to pay is not a relevant consideration, the Commission points to the 1992 amendments to 7 U.S.C. § 9a(1), which "obviated the *Commission's* duty to consider a respondent's net worth when assessing a monetary penalty." JCC Inc. v. CFTC, 63 F.3d 1557, 1570–71 n.42 (11th Cir. 1995) (emphasis added). The weight of well-reasoned authority has found that the amendments did not impact what a court can consider. See, e.g., U.S. Commodity Futures Trading Comm'n v. Hall, 49 F.Supp.3d 444, 454–55 & n.5 (M.D.N.C. 2014), aff'd, 632 Fed.Appx. 111 (4th Cir. 2015) (summary order); Commodity Futures Trading Comm'n v. King, No. 06-CV-1583-M, 2007 WL 1321762, at *5 (N.D. Tex. May 7, 2007); Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., No. 99-CV-1558-T-MSS, 2006 WL 1406542, at *1 (M.D. Fla. May 19, 2006).[2] 7 U.S.C. § 9a speaks to what the Commission can consider in assessing a penalty for a violation. But this action is brought pursuant to 7 U.S.C. § 13a–1(d)(1), which provides that the "Commission may seek and the court shall have jurisdiction to impose . . . a civil penalty." That section does not limit what mitigating circumstances a court can consider in setting a CMP. It is no accident that, in imposing civil penalties pursuant to 7 U.S.C. § 13a–1(d)(1) following the 1992 amendments, courts have generally continued to consider what a defendant can realistically pay. E.g., 4X Sols., 2015 WL 9943241, at *3; U.S. Commodity Futures Trading Comm'n v. Yorkshire Grp., Inc., No. 13-CV-5323 (AMD)(ST), 2016 WL 8256380, at *6 (E.D.N.Y. Aug. 19, 2016), report and recommendation adopted, No. 13CV5323 (AMD) (ST), 2016 WL 5942310 (E.D.N.Y. Oct. 12, 2016); Commodity Fu-

tures Trading Comm'n v. Amerman, No. 1:07–CV–2280–(WBH), 2013 WL 12099156, at *7 (N.D. Ga. Apr. 19, 2013), aff'd, 645 Fed.Appx. 938 (11th Cir. 2016) (summary order); Commodity Futures Trading Comm'n v. Rosenberg, 85 F.Supp.2d 424, 455 (D.N.J. 2000).

Under all the circumstances, the CMP that the Commission seeks would be excessive and unrealistic.

Accordingly, the Court will impose a CMP of $167,728 on the defendant. That is a just penalty considering the nature of the violation and all of the mitigating factors in this case.

## CONCLUSION

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Commission's motion is **granted in part and denied in part**. The Clerk is directed to close all pending motions. The parties are directed to submit a proposed final judgment within two (2) days providing for a civil monetary penalty of $167,728 and closing this case.

**SO ORDERED.**

---

**2.** But see Commodity Futures Trading Comm'n v. Aurifex Commodities Research

Co., No. 1:06-CV-166, 2008 WL 299002, at *12 (W.D. Mich. Feb. 1, 2008).